PINER
vs.
CLARY.

2. A defect of parties should be relied on in the def'ts answer, otherwise it is to be regarded as waived. (*Code of Prac., sec.* 123.)

---

## Piner *vs.* Clary.

Case 24.

### APPEAL FROM CAMPBELL CIRCUIT.

ORD. PET.

1. The liability of an indorser of a mercantile paper is to be tested by the laws of the place where the indorsement is made.
2. A certificate of deposit is a mercantile paper, and passes by indorsement as such. (*Miller, &c. vs. Austin, &c.*, 13 *Howard*, 228 )
3. A certificate of deposit, issued by a banker in Cincinnati, Ohio, and indorsed by the payee in Kentucky, assumes the character of a foreign bill of exchange; and that it was payable in *currency* does not destroy its character as a bill of exchange. (*Revised Statutes, page* 94.)
4. Bills and checks when payable on presentation or demand, must be presented in a reasonable time after they are received.
5. A bill or check, received on Newport, and payable in Cincinnati, these places being separated by the Ohio river only, should be presented on the next business day, and protested by a notary if not paid on that day, as no days of grace are allowed on such paper, and notice given to the indorser, (6 *B. Monroe*, 61,) according to the law of the place where the indorsement was made. (*Chitty on Bills*, 506.)

[The facts of the case appear in the opinion of the court.—REP.]

*Hallam & Jones* for appellant—

Argued—1. That there exists in the law a clear distinction between checks, bills of exchange, and promissory notes. (*Chitty on Bills*, 52–322; 2 *Story's C. C. R.*, 512; *Smith's Mercantile Law*, 197; 6 *Cowen*, 490; 2 *Hill*, 425; 13 *Pet.*, 564; *Hardin*, 218; 1 *Mar.*, 540; 2 *Ib.*, 348; 3 *Ib.*, 163; 6 *Mon.*, 89; 2 *Dana*, 214) And according to well settled law, the liability of the parties to such instruments varies according to the nature of the instruments.

If the certificate of deposit, exhibited in this case, is in the nature of a bill of exchange, there may arise a question as to the liability of the indorser, which must be governed by the time at which the indorsee was bound to present it for payment; there being no time designated on the face of the certificate. If the indorsee was bound to present it immediately, the presentment and protest, on the 21st October, was sufficient to bind the indorser.

If the certificate is to be treated as a bill of exchange, it is to be regarded and treated as a *sight* bill. Manchester is the *acceptor*, and Clary the drawer. It was, as it imports, presented and accepted before it came to the hands of Piner by indorsement, and all that was necessary was its presentation for payment. If it be necessary to present for payment on the day it becomes due, to charge the drawer, that rule cannot apply in this case; because it either became due before it came to the hands of Piner, or it was not due until actually presented by him. And how long might Piner retain the paper without presentation for payment? If the certificate was payable on demand, the law, as well settled is, the presentment must be made in *reasonable* time after receiving it. What is reasonable time is a mixed question of law and fact, to be decided as all such questions are.

Treating this paper as a *sight* bill, Clary's indorsement on it is the drawing of the bill, and the face of

the certificate Manchester's acceptance. The facts show then that Clary drew the bill in Kentucky, and it was payable in Cincinnati—not the place where drawn—and according to the strict law in such cases, Piner had until the next business day to forward it to Cincinnati, and the party receiving until the succeeding day to present it for payment. (*Smith's Mercantile Law*, 224.) The bill was received by Piner on the 14th October—Saturday—he had until Monday to forward it, which was the 16th, it would be received at Cincinnati on the 17th, and should have been presented on the 18th, and at that time the bank was closed, that was the time of *sight* according to the rule, (*Smith's Mer. Law*, 244,) and it was not really payable until the 21st October, three days of grace being allowed, on which last named day it was regularly protested, and notice given to the drawer. This was all that was necessary to charge the appellee, and the judgment releasing him was erroneous.

There is an obvious difference between this certificate, with Clary's endorsement thereon, and a check. If the fund was in the bank, no other order than that of the indorsement would draw it, and the failure to present it could not endanger the fund, and render it liable to any subsequent order; hence such strict diligence was not necessary as in case of a check. For one of the reasons for the immediate presentation of a check is to prevent the appropriation of the fund on which it is drawn to other purposes, but if the indorsement of Clary is to be regarded as his check upon Manchester's bank for so much money, the general rule is, that as it was delivered at a different place from that at which it was payable, that it should have been forwarded on the following day, and it was not presentable until the day after. (*Chitty on Bills*, 512; 10 *Wend.*, 304; 13 *Ib*, 549; 6 *Ib*, 443.) These authorities fully discuss the question of diligence in the presentment of checks. Chitty says, on the authority of cases cited although somewhat ancient, as

*Burrows*, 676, that checks are not protestable, and we are unable to discover where that doctrine has been overruled. Certainly, by the laws of Kentucky, no protest is necessary, for this court said in *Whiting*, *&c., vs. Walker*, 2 *B. Mon.*, 262; *Goddin vs. Chipley*, 7 *Ib*, 577: *Bank U. S. vs. Leathers*, 10 *Ib*, 65; that the protest of a domestic bill of exchange is superfluous and therefore unauthoritative, and in *Shreeve & Combs vs. Duckham*, 1 *Lit.*, 194, that "a bank check is in the nature of a domestic bill of exchange. This court will not presume that the law in this is different." (*See cases last cited.*)

In this case Clary endorsed this paper in Newport, Kentucky. The bank was in another state; it was endorsed on Saturday, after banking hours; it was presented three times on Monday following and payment refused; on Tuesday, Clary was absent from home, on his return notice was given.

According to the ruling of this court in 1 *Lit. supra*, and the general law regulating presentment of checks taken together, Piner had Monday to forward the check to Cincinnati, if received on Tuesday, until Wednesday to present it and then to present it again on Thursday and until Friday to dispatch notice to Clary, which he would receive on Saturday the time at which the notary gave him notice, at which time Manchester had absconded and his bank had failed beyond hope of redemption, and after Payne, the clerk of Piner, had given Clary notice, Piner used all the diligence that the law required of him.

These suggestions are based upon the hypothesis that notice was necessary when the paper is not necessarily required to be protested.

The notice of dishonor and non-payment has reference entirely to commercial paper when protest is necessary; a check is evidently not of that character. The paper cannot be regarded as any thing more than a promissory note, not a bill of exchange, and to be placed on the footing of such paper, Clary's endorsement is to be treated as an assignment of a

note and the action as an ordinary action by assignee against assignor. The weight of authority sustains this position. There have been but few adjudications arising out of certificates of deposit, and although there has been some conflict in the authorities as to their true character it has been in the main ruled as suggested. In the case of *Miller vs. Austin, &c.*, 13 *Howard*, 228; in which the question was directly made, the supreme court of the United States said, "every reason exists why the indorser of this paper should be held responsible to his indorsee that can prevail where the paper indorsed is in the ordinary form of a promissory note, and as such notes the state courts generally have treated certificates of deposit, payable to order; and the principles adopt by the state courts, in coming to this conclusion, are fully sustained by the writers of treaties on bills and notes." This certificate is the promise of Manchester to pay to the order of Clary, which makes it a promissory note and nothing else, or if it be considered that the words "in currency" makes it payable in anything else than money, then it is Manchester's covenant in writing and governed by the same rules and subject to the same law of assignment as promissory notes to pay money, and assignable. (*Rev. Stat., page* 193 )

The certificate of deposit being in substance and legal effect a promissory note, what was the diligence required on the part of Piner to hold the assignor liable? Diligence is a question of law. (*Johnson vs. Lewis*, 1 *Dana*, 183.) The assignee must use all the ordinary facilities afforded by law to recover of the obligor, before returning upon the assignor, and he is not bound to pursue the *extraordinary* means, (*Oldham vs. Bergan*, 1 *Lit.*, 132;) but to use such means as a man of ordinary prudence would use. (*Clarke vs. Prentice & Weisenger*, 3 *B. Mon.*, 586.) Nor is he bound to use even such means where they would be utterly useless. As in case of hopeless insolvency, bankruptcy, death and no administration,

or non-residence. (*Clare vs. Barr*, 2 *Mar.*, 256; *Wood vs. Berthoud*, 4 *J. J. Mar.*, 307; *Roberts vs. Atwood & Co.*, 8 *B. Mon.*, 210.) If the paper is a negotiable instrument and not discounted at bank the assignee can maintain an action at the maturity of the note when the obligor is insolvent and a non-resident. (*Stapp vs. Anderson's ex'or, &c.*, 1 *Mar.*, 540.)

The laws of Kentucky govern this case, as it was here that the assignment was made. (*Young vs. Harris*, 14 *B. Mon.*, 556.)

This paper is clearly an assignable instrument and the assignee has used all reasonable diligence to obtain the money from the obligor which an ordinarily prudent man would have used in regard to the collection of his own debt. The facts in the case show that no prudent man would have thought of instituting suit and incurring costs. Upon the whole case, Piner should have had judgment against Clary the assignor.

*J. W. Stevenson* on the same side—

In addition to what has been so well said on behalf of appellant, only a few remarks will be made. The assignment was clearly made in Kentucky and is to be governed by the law of Kentucky. If the certificate of deposit be treated as Manchester's promissory note, as I am inclined to think it should be, the subsequent assignment by Clary is a new contract, and the precise question suggested in *Young vs. Harris*, 14 *B. Mon.*, 556; and not decided. The question of whether the note or certificate is payable in Ohio, and negotiable there, cannot effect the present question, because the assignment between Clary and Piner was a new contract, based on a distinct and separate consideration, and is governed by the law of the place where such contract was made, and that is Kentucky. It therefore seems to me immaterial whether the certificate of deposit is to be governed by the law of Ohio or whether it is negotiable or not. The sole question is whether this as-

signment is to be governed by the laws of Kentucky; ·
if so, the next question is, has due diligence been
used? No protest was necessary, and no suit or
judgment could have been had against Manchester,
because he was a fugitive from justice within three
days from this assignment; his whereabouts has not
yet been ascertained. The law does not require an
assignee to do an unreasonable thing. He is often
excused from pursuing the obligor to insolvency by
ordinary course of law. (2 *Mar.*, 256; 4 *J. J. Mar.*,
367; 8 *B. Mon.*, 210.)

It may be assumed that when the obligor, at the
time a note is assigned, resides out of the state, that
the assignee is to pursue him, but this rule could not
require Piner to pursue Manchester when he fled, and
when the proof in this case shows that Manchester
was insolvent at the date of the assignment. It is
insisted that Piner has used all due diligence and
should have had judgment.

*Root & Webster* for appellee—

Several questions have been mooted as arising in
this case which may be stated as follows:

1. Is the instrument sued on negotiable and gov-
erned by the general rules of mercantile law?

2. Is it to be governed by the laws of Kentucky
or of Ohio, and is it a negotiable instrument by the
law of either or both of those states; and does the
fact that the certificate is for $100, payable in cur-
rency, change its character or effect?

3. Piner was bound to use all reasonable diligence
to obtain the money from Manchester, and duly to
notify Clary of any failure to pay; all of which he
failed to do.

We know of no adjudicated case upon *certificate of
deposit*, consequently are at some loss to class the in-
strument with bills of exchange or notes placed on
the footing of bills of exchange, or checks, or notes
not deemed negotiable, nor governed by mercantile

PINER
vs.
CLARK.

law, or whether such instruments form a separate class.

In the case of *Patterson vs. Poindexter*, 6, *Watts & Serj*., 227, it was held that an instrument in writing issued by a bank, signed by the Assistant Cashier, in these words, "I hereby certify that C. T. has deposited in this bank, payable 12 months from 1st May, 1839, with 5 per cent. interest, till due, per annum, $3,691 63, for the use of R. P. & Co., and payable only to their order upon the return of this certificate," was not a promissory note within the statute of Ann, but a certificate of deposit on special terms. *Such an instrument was deemed negotiable for the purposes of transfer only, but not to make R. P. & Co. liable on their indorsement to the holder.* It was regarded as a special agreement to pay the deposit to any one who should present the certificate and the depositor's order. (See *note to Smith's Mercantile Law, page* 200.)

But we find a case, determined by the supreme court of the United States, which seems to be in point, upon a certificate of deposit, as follows:

No. 959. Mississippi Union Bank, Jackson, (Miss.) Feb. 8, 1840. I hereby certify that Hugh Short has deposited in this Bank, payable twelve months from 1st May, 1839, with 5 per cent. interest till due, fifteen hundred dollars, for the use of Henry Miller, and payable only to his order upon the return of this certificate.                 W. P. GRASON, Cashier.

[$1,500.]

The suit was by the last endorsee against his immediate endorser, and brought in the circuit court of the United States for the district of Ohio, and the court says that the only question presented worthy of note, is whether the paper sued on is a negotiable instrument—that "The statute of Ohio declares all promissory notes drawn for a sum certain payable to any person or order, or to any person or his assigns, negotiable by endorsement.

"The established doctrine is, that a promise to deliver, or to be accountable for, so much money, is a

good bill or note. Here the sum is certain and the promise direct. Every reason exists why the endorser of this paper should be held responsible to his endorsee, that can prevail in cases where the paper endorsed is in the ordinary form of a promissory note; and as such note the state courts generally have treated certificates of deposit payable to order; and the *principles* adopted by the state courts in coming to this conclusion are fully sustained by the writers of treaties on bills and notes. Being of opinion that the circuit court properly held the paper indorsed negotiable, it is ordered that the judgment be affirmed."

13 *Howard, Sup. C. Rep. U. S., page* 228; *Henry Miller, &c., vs. David Austin, &c.* Thus the general doctrine of negotiability of certificates of deposit *payable to order*, seems to be established by very high authority, and we must confess that it seems quite consistent with the advance, as well as the wants of commerce and trade.

It is to be observed, also, in this action, that the above cited case was one involving the Ohio law on this subject.

2. We consider that under the proof in this case it is not material whether the rights of the parties are determined by the law of Ohio or Kentucky. The certificate was drawn and made payable in Ohio: it is alledged by the defendant that the *endorsement* was made in Kentucky; we believe that this fact is not proved, except by inference.

If the law of Ohio is to govern the case, then the instrument sued on is negotiable by endorsement and governed by the law Merchant. In addition to the above case of *Miller vs. Austin* we refer to the *Statutes of Ohio, by Swan, page* 587, where, under the head of negotiable instruments, it is enacted that all "Bonds, promissory notes, bills of exchange, foreign and inland, drawn for any sum or sums of money certain, and made payable to any person *or order*, or to any person or assigns, shall be negotiable by in-

dorsement thereon, so as absolutely to transfer and vest the property thereof in each and every indorsee successively." This statute is still in full force, and under it it has been repeatedly adjudicated by the highest court of Ohio, that notes or obligations expressed upon their face to be payable in "current funds of the State of Ohio" or "current Ohio bank notes," or "in the currency of this place," or "in current bank notes of the city of Cincinnati," or the like, are considered as notes or contracts for *money* and are negotiable and governed by the strict rules of the commercial law. (*Dugin vs. Campbell* 1 *Ohio Rep.* 115, 119; *Same—Morris vs. Edwards*, 189, 205; *Swetland vs. Creigh, &c.*, 15 *Ohio Rep.*, 120; 16 *Ohio Rep.* 5; 18 *Ohio Rep.*, 179.)

"*Currency*" means *current money.* (1 *Ohio Rep.*, 119.)

By the *Revised Statutes of Kentucky,page* 194, "Bills, drafts, or checks, payable in bank notes or currency, or other funds, *wheresoever drawn* or *payable*, shall be deemed negotiable and treated in all respects as if drawn for money, except as to the value of the currency in which they are payable."

"Currency of Kentucky" means the circulating medium of the State at the date of the instrument in which the expression is used, no matter whether such medium be bank notes or the lawful coin of the United States. (5 *J. J. Marsh*, 63-4.)

"Bank notes" are treated as money for many purposes, and are often so regarded in the law. (*Same case and authorities there cited.*)

But in the case at bar the plaintiff charges that "*currency*" was of par value at the date of the assignment, and there is no proof in this record that bank notes or any thing else than gold and silver constituted the circulating medium or currency at that time, and the certificate is not for bank notes, but for *one hundred dollars*, payable in *currency.*

By our *Revised Statutes, page* 103, all bonds, bills,

or notes, for *money* or *property*, shall be assignable, so as to *vest* the *right of action* in the *assignee*.

If the certificate of deposit is embraced in the provisions of the above enactment, then the *right of action* against Manchester was *vested* in Piner by the assignment of Clary, and if he could hold Clary responsible on his assignment at all on this instrument, it would only be upon his showing that he had used all due and proper diligence to enforce payment from Manchester.

3d. This brings us to the last, and as we conceive, the principal question in this case. Admitting, for the purposes of the argument, that upon a proper case of diligence made out, Clary could have been held liable upon his indorsement on this instrument, we contend that not only has Piner totally failed to show such diligence on his part, to obtain or coerce the money from Manchester, but the proof conclusively shows such want of diligence as might justly be termed a culpable negligence, and even a fraud upon the rights of Clary as indorser, were it possible that he could be held responsible in such a state of case.

The instrument sued on is payable at no particular day, but is as if payable on demand.

"*Instruments* expressed to be payable *on demand*, or having *no time of payment expressed*, as in the case of Bankers' notes and checks, are payable instantly on presentment, without any allowance of days of grace; and the presentment for payment of such instruments, *must* be made within a reasonable time after the receipt of them—usually *the next* day. And a country Banker's deposit-note, given in this peculiar form, "payable with interest to the day of acceptance, is payable *immediately* on presentment without any days of grace." (*Chitty on Bills*, 10*th American edition*, 1842, *pages* 377, 380–1–2; *Story on Bills*, sec. 342.)

A note which expresses no time of payment, is, by law, payable immediately. (8 *John. Rep.* 374, 189; 13 *Mass. Rep.* 131; 2 *McCord* 246.)

If there be the least apprehension of a failure, the check ought to be presented at the earliest moment. (*Chitty on Bills*, 368.)

But Piner, it seems, did not present the certificate to the bank on Monday, the 16th of October, 1854, but it was coupled with a demand for four or five hundred dollars in addition thereto; he never demanded payment of the certificate separately from the other amount, and the proof is, that if he had, it would have been paid. But admitting that he did demand payment of it on Monday, and was refused, then it devolved upon him at once to have it duly presented, and payment thereof demanded, and the same protested, and due notice given to Clary.

Such is the general rule of law. (*Chitty on Bills*, 368—432; *Story on Bills, sec.* 273.) So is the law of Ohio, whether it be a domestic or foreign bill or note. (*Parker vs. Riddle*, 11 *Ohio Rep.*, 106.) So also is the law of Kentucky. (*Strader, &c, vs. Bachelor*, 8 *B. Mon.*, 169–180.)

Nor would the absence of Clary from home excuse delay in presentment, demand, protest and notice. (*Davis vs. Herrick*, 6 *Ohio Rep.*, 55 ; 3 *Bibb.*, 122.)

But if this instrument sued on is not to be governed by the mercantile law, still the negligence of Piner to obtain payment of Manchester, when he could by proper diligence have done so, has most certainly exonerated Clary from all liability.

Piner knew on Monday, 16th October, 1854, before noon, that Manchester, or the Peoples' Bank (which is the same thing)—was in a failing condition, yet he accepted the proposition of Manchester for delay, and while other men were drawing money from the bank on Monday and Tuesday, 16th and 17th October, 1854, Piner never made an effort after noon of that Monday to obtain the money on the certificate and for aught that appears, let the certificate lie at the People's Bank from Monday morning before bank hours until after the bank failed.

The proof conclusively shows that even the most ordinary diligence on the part of Piner in demanding payment upon the certificate alone would have brought him the money and he would not even have been driven to a suit against Manchester.

The fact that in the *opinion* of the assignee of Manchester he had been insolvent for one year, predicated upon the idea that if his business had been wound up he would have been found unable to pay all his debts, cannot excuse Mr. Piner, even if it be true; solvent or not he could have got the money on the certificate if he had used the diligence of Mr. Long who drew near $200 on Piner's check on the same Monday, and some thirty other persons, who drew large amounts on that day, as well as many others who drew on Tuesday.

We have no doubt that a large part of the commercial community—men largely engaged in business would be found unable to pay all their debts if wound up ; but would that be an excuse for want of diligence in demanding payment of money of them by the assignee of note?   Is it reasonable to suppose that if Piner had duly informed Clary that he had difficulty in obtaining the money on the certificate that Clary would not have demanded it and got it either on Monday afternoon or Tuesday?   Was it not the duty of Piner, in law, good conscience and morals to immediately inform Clary of the non-payment, if he intended to look to him upon his assignment?   But instead of that he slept upon his rights until Manchester on the Saturday following made an assignment and left the country, and until Clary had gone away on a visit and returned some days afterwards; then it was that Clary, for the first time, was informed that the certificate was not paid.   Is that diligence and fair dealing?   Can Piner now say he did not get or make the money of Manchester and therefore he has a right to recover it of Clary?   Nor can the fact that Manchester was a non-resident of Kentucky excuse Piner; this was known by him and

contemplated at the time of the assignment. The assignee must use every compulsory process of the law against the debtor and all the incidental remedies to compel payment: except where the obligor is out of the commonwealth *and such was not contemplated by assignor and asssignee.*  (1 *Bibb* 542; 5 *Lit.* 194.)

Manchester was at the very place that the parties contemplated.   He was at the People's Bank in Cincinnati, and that he would have paid the certificate if presented at the said Bank either on Monday, 16th of October, 1854, or Tuesday, 17th, if it had been presented by itself, not coupled with, and made to abide the fate of other demands, we feel there cannot be the shadow of a doubt.

Then we ask who shall lose?   Shall it be Clary the innocent indorser ; or shall it not be Piner the negligent holder who chose to rest upon the written proposition of Manchester for delay communicated to him before noon on the 16th day of October, 1854? We respectfully ask an affirmance of the judgment.

*Tho. N. Lindsey* for appellee—

The writing sued upon in this case both by the law of Ohio and that of Kentucky should be treated as a draft or bill.   It is different from an ordinary certificate of deposit in this, that it is made payable to the order of Clary.   There is the promise to pay expressly on the face of the paper, the statutes alone making such paper payable in currency of the same grade as writings before the statutes had, which were payable in money.   Being then, as I suppose a bill, it should have been treated as such and, as it was payable on presentation, was not paid on Monday, the 16th day of October, it should have been protested for non-payment.   Days of grace are not given on such bills here and there is no evidence of any such law in Ohio.   It would be a curious rule that would require the presentation of such paper and then allow three days of grace after the presentation. Where paper is payable on a particular day then the

grace is allowed as there is a day fixed and a period afterwards within which the payment is made, but this paper is payable, not on a given day, nor within so many days, but on presentation which might have been the same day given, the next, or any other day. When Clary passed it to Piner a new contract arises between them and that was if Piner did not get the currency called for on presentation upon protest and notice, Clary should be bound to pay it; but Piner, instead of having the paper protested, left it at Manchester's bank, with other claims to the amount of $500, altogether. Whether he was credited on Manchester's books does not clearly appear. But a check was drawn by Piner for $200, and it was paid after his interview with Manchester in the morning; another order was drawn by Piner for a large sum, including this draft, and when the teller was about paying the draft Manchester called attention to the payment of the $200 check and asked time; time was given and no more is heard of the draft, so far as the proof goes, until the 21st October, five days after Piner had first left the draft at Manchester's bank.

This conduct of his releases Clary clearly, if the writing is a bill or draft, and equally as well if it is to be treated as a mere certificate of deposit or treated by the rules governing promissory notes.

When time was asked for payment, not a moment or an hour should have been given, nor should the draft have been left with Manchester to be credited to Piner, nor should he have gone to drawing up orders on it or mixing it with other matters and drawing his checks upon it.

The money or currency according to the stipulations of the writing had been deposited with the banker; he promised to pay it with six per cent. interest on presentation. If the law would have given the holder three days either as grace or as a reasonable time within which to demand payment, still as he presented it sooner he was bound to protest and

give notice immediately within the time and according to the forms presented by law.

Manchester was in the city until the 21st, or after that time. Piner, a banker himself, ought to have known the necessity of immediate action when the paper was not met at once. He did not make his assignment until the 21st, yet Piner holds on, giving no notice to Clary, and when the debt is lost attempts to come back upon him. It would not be just or right.

The attempt to show Clary absent on the 16th October is a failure, but if he had been absent no reason is shown why there was not a protest and written notice, the latter left at Clary's place of residence, as required by law.

An affirmance is prayed.

January 8.

Judge SIMPSON delivered the opinion of the court:

On the 14th of October, 1854, Clary transferred to Piner a certificate of deposit, which was made out in the following form, viz:

"PEOPLES' BANK, Cincinnati, Oct. 5th, 1851.
"$100.                                        No. 3577.

"U. Clary has deposited in this bank, one hundred dollars, payable to the order of himself in currency, with interest at the rate of six per centum per annum on the return of this certificate.

"P. B. MANCHESTER."

The transfer was made by an indorsement as follows:

"Pay A. J. Piner."            "U. CLARY."

Piner and Clary both resided in Newport, at the time the transfer was made, at which place the former carried on the business of a broker.

The transfer of the certificate of deposit was made on Saturday, and on the following Monday, being the 16th day of the month, payment thereof was demanded, at the counter of the People's Bank, in Cincinnati, and a promise made to pay it in the course of the day. It was not paid however, although a

check which was drawn by Piner, for near two hundred dollars, as well as various other checks, drawn by other persons, were paid during the day. At the time the amount of the transferred certificate was called for by Piner, he also called for four hundred dollars more to which he was entitled as a depositor. Manchester's clerk proved that if he had only demanded the amount of the certificate of deposit, it would have been paid to him. The bank continued to do business on the following day, and then closed indefinitely. Manchester, who seems to have been the sole owner of the bank, immediately made an assignment of all his effects, and in a few days thereafter, left for parts unknown, and has not been since heard of.

On the 21st day of the same month, the certificate of deposit was presented at the banking house of Manchester, which was then closed, and protested for non-payment. Notice of its dishonor was not given to Clary, until some days after the bank had failed.

This action was brought by Piner to recover the amount of the certificate of deposit, from Clary, and the case having been submitted to the court, without a jury, a judgment was given for the defendant from which the plaintiff has appealed.

The liability of Clary, depends essentially upon the character of the writing which he transferred to the plaintiff, and the nature and legal effect of his indorsement thereon.

If as contended, it should be regarded as a mere promissory note, and assignable as such under our statute, and not as a mercantile instrument, then it follows, that the plaintiff was not bound, to have it protested for non-payment, nor to notify the assignor that it had not been paid, nor to do anything more, than to prosecute the maker thereof to insolvency with due diligence. The indorsement having been made in this state, the rights and liabilities of the

1. The liability of an indorser of a mercantile paper is to be tested by the laws of the place where the indorsement is made.

parties, under it, must be regulated by the law of the place where the indorsement was made.

Such instruments however are regarded as mercantile paper, and generally treated as such, and should not therefore be made to assume a character, which would place them upon a different footing, and change essentially the rights and liabilities of the parties.

2. A certificate of deposit is a mercantile paper, and passes by indorsement as such. (*Miller, &c. vs. Austin, &c.,* 13 *Howard,* 228.)

In the case of *Miller, &c., vs. Austin, &c.,* 13 *Howards R. S. C.,* 228, which was a suit on a certificate of deposit against the indorser the court said, "the established doctrine is that a promise to deliver, or to be accountable for so much money, is a good bill or note. Here the sum is certain, and the promise direct. Every reason exists why the indorser of this paper should be held responsible to his indorsee, that can prevail in cases where the paper indorsed is in the ordinary form of a promissory note, and as such note the state courts generally have treated certificates of deposit payable to order, and the principles adopted by the state courts in coming to this conclusion are fully sustained by the writers of treatises on bills and notes. Being of the opinion that the circuit court properly held the paper endorsed negotiable it is ordered that the judgment be affirmed "

It will be perceived that in this case the principle which the court intended to establish, was that an indorsed certificate of deposit should be regarded as negotiable paper. In the state where the transaction occurred, promissory notes were negotiable, and therefore the certificate of deposit was assimilated to a note of that description. But as under the law of this state, a different effect altogether, would result from treating the writing as a mere promissory note, and as such, it would lose its negotiable character, it should not be regarded as a note, but as a mere evidence of a deposit, and the indorser should be considered as the drawer, of a check or bill for the amount named in the certificate.

The act of indorsing a bill is equivalent to that of a new drawing, and it has this effect on the person making it, whether the bill be originally negotiable or not. (*Story on Bills*, 131; *Chitty on Bills*, 267.)

And as the certificate of deposit was payable in another state, the instrument, as to its negotiability and the rights and duties of the parties, was placed on the footing of a foreign bill of exchange. The fact that it was payable in currency does not deprive it of this character, inasmuch as it is expressly provided by the *Revised. Statutes, page* 194, that "bills, drafts or checks, payable in bank notes or *currency*, or other funds wheresoever drawn or payable, shall be deemed negotiable, and treated, in all respects, as if drawn for money, except as to the value of the currency in which they are payable."

Regarding it then as placed on the footing of a foreign bill, it is evident, that the holder by his *laches* has discharged the endorser from all liability on the instrument. Bills and checks when payable on presentment, or demand, as the writing in this case was, must be presented within a reasonable time after they have been received. As Newport and Cincinnati, although in different states, are in close juxtaposition, and only separated by the Ohio river, payment of the certificate of deposit should have been demanded on the first day of business next following the day it was received by the holder, having on that day been transferred to him, after banking hours. It was presented for payment in due time, but it was not protested on that day for non-payment as it should have been. It was payable immediately on presentment, without any days of grace, for it is well settled, that when a check or even a bill, is made payable on presentment or demand, or where no time of payment is expressed, it is payable instantly on presentment, without any allowance of days of grace. (*Chitty on Bills*, 410.)

A protest for non-payment was indispensably necessary and should have been made on the 16th, when

PINER
*vs.*
CLARY.

3. A certificate of deposit, issued by a banker in Cincinnati, Ohio, and indorsed by the payee in Kentucky, assumes the character of a foreign bill of exchange; and that it was payable in *currency* does not destroy its character as a bill of exchange. (*Rev. Stat., page* 94.)

4. Bills and checks when payable on presentation or demand, must be presented in a reasonable time after they are received.

5. A bill or check, received on Newport, and

payable in Cincinnati, these places being separated by the Ohio river only, should be presented on the next business day, and protested by a notary if not paid on that day, as no days of grace are allowed on such paper, and notice given to the indorser, (6 *B. Monroe*, 61,) according to the law of the place where the indorsement was made. (*Chitty on Bills*, 506.)

the certificate was presented for payment. (*Chitty on Bills*, 489.) And the presentation for payment should have been made by a notary public, and if the payment had been refused, a protest should have been regularly made in due form, and was absolutely necessary to enable the holder to recover against the drawer or indorser. (*Chenowith & Co., vs. Chamberlain*, 6 *B. Mon.*, 61.) As the parties resided in the same place, notice of the non-payment should have been given on the succeeding day. (*Combs vs. Duckham, &c.*, 1 *Lit.*, 194.) The time of making protest is to be regulated by the law of the place where it is made; but the time of giving notice of the non-payment is to be regulated by the law of the place where the drawer and indorsers respectively resided at the time when the bill was drawn or endorsed. (*Chitty on Bills*, 506.)

There being no proof, as to the law of Ohio, with respect to the time when the protest should have been made, we have regarded the general law merchant as applicable to the case; but as the time of giving notice of the non-payment is regulated by our own law, and as that was not complied with, the indorser is on that ground alone discharged from all liability on the instrument.

An attempt has been made to excuse the failure to give notice, on the ground that the defendant left home on the day succeeding that, on which the certificate of deposit was presented for payment. But that excuse is insufficient, because, if notice had been regularly given, he might have received it before he left home, or some person may have been authorized to attend to his business in his absence, and would have done so, had notice been given at his dwelling, or his usual place of business.

If the plaintiff when he presented the certificate of deposit, had insisted on its payment, and informed Manchester, that unless it was paid, he would have it presented by a notary public and protested, it is clear, according to the proof, that payment of it

would have been made. Instead however of adopting this course, he seems to have relied upon the promise that it should be paid, and did not even make any effort on the succeeding day to collect it, although the bank was then open, and still doing business. Under these circumstances it is just and right that he should bear the loss which has resulted from his own negligence.

Wherefore, the judgment is affirmed.